IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff-Respondent,

v.                                  CIV 09-0219 JB/KBM
                                      CR 04-1978 JB

ROBERT MICHAEL HANRAHAN,

      Defendant-Movant.

# PROPOSED FINDINGS
# AND
# RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Defendant Robert Hanrahan's

motion seeking habeas relief under 28 U.S.C. § 2255.  *See Doc. 1 at 4.*[1]  Although

the federal form for initiating a § 2255 action is labeled as a "motion" (as was

Hanrahan's self-styled "motion"), it is a common practice for both this Court and

the Tenth Circuit to refer to the document as a "petition" and to Defendant as

"Petitioner," and I will do so here.[2]

---

[1]  Unless otherwise noted, citations to *"Doc."* are the documents filed in this civil action and the page numbers refer to the CM/ECF pagination assigned to the document.

[2]  *See, e.g., United States v. Gaines,* 2008 WL 4925837 at * 1 (10th Cir. 11/18/08) ("seeks a certificate of appealability . . . to challenge the district court's denial of his 28 U.S.C. § 2255

In each of his seven claims, Petitioner argues that one of the two Federal Public Defenders who represented him was ineffective.  *See Doc. 1* at 4, 12.  Under *Strickland v. Washington,* 466 U.S. 668 (1984), Petitioner must demonstrate that counsel's conduct was constitutionally deficient and that but for the conduct, the result of the proceeding would have been different.  Failure to make either showing defeats the claim.  *E.g., Smith v. Robbins,* 528 U.S. 259, 286, n.14 (2000); *Strickland v. Washington,* 466 U.S. 668, 687 (1984); *United States v. Orange,* 447 F.3d 792, 796-97 & n. 5 (10th Cir. 2006).

I will not elaborate on the petition's lack of merit in these proposed findings, and a bit of background will put that decision in better perspective.  As the Presentence report indicates, Petitioner has had significant contact with the criminal justice system his entire adult life.  *See Presentence Report* at 6-16.  Federal law prohibits anyone who has been convicted of a felony from possessing firearms or ammunition.  *See* 18 U.S.C. § 922(g)(1).  Those felons who violate that prohibition and who have three or more prior felonies that were punishable by

---

petition"); *United States v. Hardridge,* 239 Fed. App'x 412 (10th Cir. 2007) ("his 28 U.S.C. § 2255 petition to vacate, modify, or set aside his sentence"), *cert. denied,* 128 S. Ct. 1263 (2008); *United States v. Jose Garcia-Cardenas,* CIV 08-0382 LH/KBM (*Doc.* 7 at 2) ("Defendant raises three claims in his § 2255 petition").

more than a year in prison and constitute a violent felony[3] or serious drug offense are considered "armed career criminals."  As such, they face a mandatory minimum sentence of fifteen years incarceration.  *See, e.g.,* 18 U.S.C. §§ 921(a)(3), 924(e)(1) (key statutes comprising offense and sentence); *Taylor v. United States,* 495 U.S. 575 (1990) (discussing type of armed career conduct Congress intended to punish).

The federal indictment listed three of Petitioner's earliest convictions.  At age eighteen, he was convicted of armed robbery and conspiracy to commit armed robbery for stealing the victim's wallet at gunpoint in case number "CR 35439" and also convicted of residential burglary and larceny of items worth more than $100 for stealing an "Intellivision" and a gallon of vodka in case number "CR 36264."

---

[3]     The term *"violent felony"* means any crime punishable by imprisonment for a term exceeding one year . . .  that –

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; *or*

(ii) *is burglary*, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another. . . .

18 U.S.C. § 924(2)(2)(B)(emphasis added).  Hanrahan argues that his conviction is for a "'generic' burglary void of violence" that cannot qualify as a "violent felony" under the statute. As the Supreme Court noted, however, "[t]his choice of language indicates that Congress thought ordinary burglaries, as well as burglaries involving some element making them especially dangerous, presented a sufficiently 'serious potential risk' to count toward enhancement."  *Taylor v. U.S.*, 495 U.S. 575, 597 (1990).

At age twenty-four, he was convicted of aggravated battery with a deadly weapon for stabbing a victim during a fight in case number "SC-88-422-CR." Because of his three qualifying prior felonies, Petitioner faced at least fifteen years (or 180 months) in prison when he was stopped in July 2004 and a small unloaded handgun was spotted next to the driver's seatbelt latch in his truck. Based on his criminal history and other factors, however, it turned out that he faced significantly more time in prison under the Sentencing Guidelines – between nineteen and twenty-four years imprisonment (or 235 to 293 months). *See, e.g., United States v. Hanrahan,* CR 04-1978 (Doc. 1 – indictment); *Presentence Report* at 6-7; *Sentencing Transcript* at 16-17, 25-26, 30-35, 40-43.

Petitioner was driving a truck that roughly matched the description of one suspected in an attempted burglary and was stopped for traffic violations. He had no license, registration or proof of insurance, and the steering column of the truck was torn out and had wires dangling from it. Petitioner was very cooperative. He readily complied with the police officer's request to step out of the vehicle. When another officer spied the gun and asked whether it was a gun or a lighter, Petitioner admitted it was a gun, though he noted it belonged to his friend and did not work. When an officer inquired about tattoos that looked like those of a prison gang, Petitioner did not hesitate in admitting that he had served time in prison for armed

4

robbery.  *E.g., United States v. Hanrahan,* 508 F.3d 962, 965-66 (10th Cir. 2007).

At trial, on appeal, and now post-conviction level, the heart of Petitioner's arguments is that it is not fair for him to face the statutory mandatory minimum, much less the Guidelines calculations, when he was simply driving to a friend's location to give her a ride and was found with an inoperable gun that his friend left in the truck by accident.[4]  Indeed, at the first trial, the owner of the gun, Edward Hartman and his wife Patricia, testified at length about how Edward accidently left the gun in Hanrahan's truck without his knowledge and that they were unable to contact him to retrieve it.  *See Partial Trial Transcript 7/19/05* at 103-149.

Petitioner testified briefly at the first trial, and was able to do so without the prosecution challenging him.  As a matter of strategy, the defense stipulated to one of the prior felonies listed in the indictment generally, so that the jury would not be

---

[4]  *See, e.g., United States v. Hanrahan,* CR 04-1978 (Doc. 99 at "Mr. Hanrahan will be serving a sentence of at least 15 years for the possession of an extremely small unloaded firearm that didn't work at the time he possessed it.  Mr. Hanrahan was open and honest at the time of his arrest about the gun that was in the cab of his truck.  No ammunition was found on Mr. Hanrahan's person or anywhere in the truck.  It was not being used in any kind [of] crime of violence, or otherwise employed to threaten[,] assault or scare any other person."); *Hanrahan,* 508 F.3d at 970 ("Mr. Hanrahan argues that his sentence is unreasonable because the nature of the instant offense was "benign," because the gun was small and unloaded, it did not belong to him, it was inoperative, and it was not used to commit another crime."); *Doc. 1* at 1-2 ("the defendant was a 'victim' of an absent minded man that made a mistake as all people do yet the defendant has to pay for another man's mistake with 235 months of his life which is totally unjust and not what the firearm laws are for."  *Doc. 1-2* at 4.

aware of the nature of those crimes.[5]  Conversely, the defense did not want any of

his other convictions to be used for impeachment purposes.  *See United States v.*

*Hanrahan, CR 04-1978* (Doc. 60 – memorializing parties' positions and pretrial

rulings from first trial).  Although the United States was granted permission to use

a prior conviction for an altered license/forgery for impeachment purposes, *see id.* at

4, Petitioner testified without the prosecutor conducting any cross-examination

about his veracity.  *See Partial Trial Transcript 7/19/05* at 91-103.

Hanrahan testified that his front seat was full of items and that he was

unaware that the gun was in the truck just next to his seat belt latch until the

officer asked him about it and he remembered Hartman's small gun.  *Id.* at 102.

This strategy appeared to have worked.  The jury was given instructions that the

definition of "knowingly" does not mean mistake or accident, that mere presence

near the gun does not constitute possession, and that mere control over the truck

---

[5]  The stipulation read, in pertinent part:  "the parties . . . have stipulated and agreed as follows . . .  First the defendant . . . had been convicted [of a] crime punishable by imprisonment for a term exceeding one year that is a felony as charged in the indictment in this case.  And then two, this stipulated fact is proved beyond a reasonable doubt."  *Partial Trial Transcript 7/19/05* at 90; *see also Trial Transcript 11/8/05* at 120-21 ("This is a stipulation:  The parties, by and through their undersigned counsel, stipulate and agree as follows:  One, the defendant, Robert Michael Hanrahan, prior to July 15, 2004, had been convicted of a crime punishable by imprisonment for a term exceeding one year.  That is a felony as charged in the Indictment of this case.  Two, this stipulated fact is proved beyond a reasonable doubt and may be read to the jury at trial.").

does not constitute constructive possession. *See United States v. Hanrahan,* CR -4-1978 (Doc. 57 at 13-14 (Instructions 11 and 12)). The jury's request for further clarification of these instructions was denied, and they eventually deadlocked, leading counsel to agree to have the Court declare a mistrial. *See id.* (Doc. 47 – Clerk Minutes and Jury Note Exhibits thereto).

At the second trial, with slightly different wording that is immaterial, the jury was given the same substantive instructions on knowledge and possession, except that the defense successfully added the additional cautionary language that momentary control also does not constitute possession. *See id.* (Doc. 86 at 13-14 (Instructions 11 and 12)). Again, the defense focused on the testimony that the gun wound up in Petitioner's car by mistake, through no fault of Petitioner, and he did not know it was there. *See Trial Transcript 11/8/05* at 125, 242-43.

As relevant for this analysis, the second trial differed from the first in that the prosecution called Edward Hartman as its own witness in its case-in-chief and called rebuttal witnesses to impeach his and his wife's veracity. Also, Petitioner did not testify at the second trial. Again, the defense strategy was to stipulate the underlying prior convictions in the same general terms so as not to antagonize the jurors. *See Trial Transcript 11/7/05* at 22-27, 177-215; *Trial Transcript 11/8/05* at 120-21, 193-211; supra note 4. And, this time, the prosecution was authorized to

7

use an additional prior conviction as impeachment.  *See United States v. Hanrahan,* CR -4-1978 (Doc. 80 at 8).

The prosecution also filed a notice that it intended to introduce Petitioner's testimony from the first trial as a nonhearsay statement of a party opponent under Federal Rule of Evidence 801(d)(2).  *See id.* (Doc. 73).  The defense objected on the grounds that the prior testimony was cumulative of what the officers would say and that introducing it would impinge on Petitioner's right to not testify, but this argument was unsuccessful.  The Court ruled, however, that the jurors were not to know that the testimony was from a trial and so the prior testimony was referred to as a "statement."  What the second jury heard was substantively identical to Petitioner's entire testimony at the first trial.  *Compare Trial Transcript 11/7/05* at 91-103, *with* 161-74.  The defense obliquely explained in its opening that Petitioner would not be taking the stand because his statements were already before the jurors through different witnesses and his statements were "consistent," and in closing argument the defense referred to Petitioner's "statements" to argue its case.  *See Trial Transcript 11/8/05* at 125, 241-55.  This jury had questions, some that plainly related to the issue of Petitioner's knowledge and some that related to his testimony.  Ultimately, the jury found him guilty.  *See United States v. Hanrahan,* CR -4-1978 (Doc. 96 – Clerk Minutes and Jury Note Exhibits thereto).

8

Clearly, if Petitioner had testified at the second trial, he could have been impeached with the details of prior crimes beyond the unspecified one to which the parties stipulated.  And a comparison of the transcripts from the first and second trial reveal that the prosecution had become much more willing to vigorously attack the credibility of any witness perceived helpful to the defense.  Indeed, since the first trial, the prosecution had developed significant evidence to poke more holes in the version of events as testified to by Hanrahan and the Hartmans.

I have thoroughly reviewed the file, the transcripts, the briefs, the exhibits and the relevant authorities.  For the reasons set forth in the Response filed by the United States, I find that the record conclusively establishes that all of the ineffectiveness of counsel claims are without merit and, therefore, an evidentiary hearing is not necessary as to those claims.  *See Doc. 6.*[6]

However, the petition contains the sentence "I certify this statement to be true and correct to the best of my knowledge under the penalty of perjury," *Doc. 1-*

---

[6] *See, e.g.,* 28 U.S.C. § 2255(b) ("[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing")*;* Rule 8(a), *Rules Governing Section 2255 Proceedings For The United States District Courts* ("judge must review . . . to determine whether an evidentiary hearing is warranted"); *United States v. Kennedy,* 225 F.3d 1187, 1193 (10th Cir. 2000) ("Under 28 U.S.C. § 2255, the district court is required to conduct an evidentiary hearing "[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."); *United States v. Duran-Salazar,* 307 Fed. Appx. 209, 210 (10th Cir. 2009) (same, citing § 2255(b)).

*2* at 27, as well as the assertions that "counsel denied defendant the opportunity to take the stand in his own defense a trial," *Doc. 1* at 4, and that counsel allowed his prior testimony to be impermissibly introduced "without putting Hanrahan on the stand himself," *Doc. 1-2* at 25.  In an unsworn document, Petitioner also asserts that he "requested numerous times to be put on the stand so the jury could see, feel & get to know the person, the man that was on trial not just a transcript" and that once counsel realized the transcript would be put into evidence, "it was her duty to allow Hanrahan the chance to testify at trial & she failed to do so."  *Doc. 10* at 17.

A recent decision by the Tenth Circuit reversed a ruling from this District that resolved a § 2255 petition on the merits without an evidentiary hearing. *United States v. Duran-Salazar,* 307 Fed. Appx. 209, 211 (10th Cir. 2009).  As here, the defendant in *Duran-Salazar* submitted a "sworn statement" alleging that his attorney "failed" to have him testify against the defendant's wishes.  Similarly, the jury had difficulty reaching a verdict and ultimately was given an *Allen* charge. Although there was evidence of record showing that the defendant could not meet the prejudice prong of *Strickland,*[7] two members of the panel held that even though

---

[7] *See, e.g., United States v. Williams,* 139 Fed. App'x 974, 977 (10th Cir. 2005) ("Even if his trial counsel ignored his desire to testify, and thus rendered ineffective assistance, Williams must still show prejudice, which is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." . . . Based on our review of the record, including the trial transcripts, we agree with the district court that no reasonable

the defendant "may [not] ultimately prevail," his allegations

> coupled with the difficulty the jury had in reaching a
> verdict are sufficient to entitle him to a hearing.  "A
> defendant's testimony could be crucial in any trial[.]"
> *Owens v. United States,* 483 F.3d 48, 59 (1st Cir. 2007).
> But rather than guess at the impact his testimony might
> have had (assuming he was prevented from testifying), "it
> is better that it be resolved after an evidentiary
> hearing[.]"  *Id.* at 60.

*Id.* Thus, *Duran-Salazar* would seem to compel that I hold an evidentiary hearing

on this issue.

       In the event an evidentiary hearing was found needed, the United States has

moved for an order that Petitioner has waived any attorney-client privilege by filing

the § 2255 petition.  *See Docs. 5, 5-2.*  The Government candidly acknowledges

that, although other courts have done so, the "Tenth Circuit has not ruled on

whether a petition has effectively waived the attorney-client privilege when he

alleges ineffective assistance of counsel in a § 2255 motion."  *Doc. 5* at 2.

Ordinarily, there is no reason to appoint counsel in a § 2255 unless the case has

reached the stage of the proceedings where an evidentiary hearing is required.  *See*

*e.g., United States v. Leopard,* 170 F.3d 1013 (10th Cir. 1999) (§ 2255 case).  Once

an evidentiary hearing is to be held, however, appointment of counsel is

---

probability exists that Williams' proposed testimony would have altered the outcome of his
trial.").

mandatory. *See* Rule 8(c), *Rules Governing Section 2255 Proceedings For The United States District Courts* ("If an evidentiary hearing is warranted, the judge must appoint an attorney").  Because I find that an evidentiary hearing should be held, which in turn mandates counsel, and because the issue of waiver is not settled in the Tenth Circuit or Supreme Court of the United States, I believe the better route is to take up the issue again once counsel for defendant makes an appearance.

Wherefore,

IT IS HEREBY RECOMMENDED AS FOLLOWS:

1.      An evidentiary hearing be conducted.

2.      Counsel be appointed from the CJA Panel for Petitioner; and

3.      The United States' motion to find the attorney client-privilege waived *(Doc. 5)* be denied without prejudice with a right to renew the motion after counsel for defendant makes an appearance.

---

THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  A party must file any objections with the Clerk of the District Court within the-ten day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.

---

UNITED STATES MAGISTRATE JUDGE